# Portable Elevator Manufacturing Company, Appellee, v. Fred D. Dutton, Appellant.

## Gen. No. 6,982.

1. BUILDING AND CONSTRUCTION CONTRACTS—*when contractor liable for injury to building.* When there is an injury to a building during the course of construction or where, during the course of construction an unusual condition is discovered in the soil under the foundation, the contractor is liable.

2. BUILDING AND CONSTRUCTION CONTRACTS—*when contractor not liable for injuries to building.* Where a building is completed and accepted and injuries thereto occur after such completion, the contractor is not liable.

3. BUILDING AND CONSTRUCTION CONTRACTS—*when contractor not responsible for defects in building.* A building contractor is not responsible for defects in a building where, by the fault of the owner, the contractor is unable to overcome defects in the soil causing the defects or where the contractor has complied with his contract and the defects are subsequently caused by the nature of the soil or the action of the elements.

4. BUILDING AND CONSTRUCTION CONTRACTS—*when contractor not liable for damage to cement corncribs.* Where cement corncribs were constructed under contract and it appeared that, upon objection by the owner that the foundations as they were started would be insufficient, they were made deeper and larger and no further objections were made by the owner and the cribs were completed, and there was very little evidence as to any defective workmanship or material and it was not until they were filled with corn that most of the defects complained of developed and they were the result of the character of the soil, the contractor was not liable for any damage to the cribs after completion caused by the defective soil upon which they were built.

5. BUILDING AND CONSTRUCTION CONTRACTS—*when instruction on right to damages for defects in cement corncribs proper.* In an action upon contract for the construction of cement corncribs in which defendant claimed damages by way of set-off for defects in the cribs, an instruction that defendant could not recover damages for the settling of the cribs after their completion, caused by the nature of the soil and not as a result of insufficient foundations, was proper.

6. BUILDING AND CONSTRUCTION CONTRACTS—*when rule as to latent defects not applicable to construction of cement corncribs.* The rule that acceptance of work with latent defects does not bind

the buyer to pay therefor is not applicable to the construction of cement corncribs where it is conceded that the damages were caused by the settling of the structures by reason of the character of the soil.

7. TRIAL—*when sustaining of objection to question asked witness not error.* The sustaining of an objection to a question asked a witness, because the question was indefinite, improper, and called for a conclusion, was not error where it did not preclude the party from asking any proper questions he might see fit to ask along the same line and did not amount to a refusal to permit evidence to be introduced on that subject.

8. APPEAL AND ERROR—*harmless error in instruction.* Where appellant agreed to pay freight on materials from a certain point and they were shipped from a different point, the court should not have instructed the jury to charge appellant with freight from the latter point, but the error was not reversible where no difference in freight charges between the points was shown and such difference, if any, would be small and the jury may not have charged any part of it to appellant.

9. BUILDING AND CONSTRUCTION CONTRACTS—*measure of damages for defects in cement corncribs.* In an action involving damages for defects in cement corncribs constructed by plaintiff, where it was not contended the cribs were falling to pieces but only that substantial damages had resulted from improper foundations, evidence of what it would cost to rebuild above the foundations did not constitute a proper measure of damages and was not a proper subject of inquiry.

Appeal from the Circuit Court of Henderson county; the Hon. HARRY M. WAGGONER, Judge, presiding. Heard in this court at the October term, 1921. Affirmed. Opinion filed February 23, 1922.

GRIER, SAFFORD & SOULE, for appellant.

E. L. WERTS and LIVINGSTON & WHITMORE, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Appellee, the Portable Elevator Manufacturing Company, a corporation, recovered a judgment for $5,000 in the circuit court of Henderson county against appellant, Fred D. Dutton, and an appeal has been prosecuted to this court. The declaration consisted

of the common counts for $5,441.50 for material and labor in the erection of an elevator and corncribs for appellant. The general issue was filed, together with notice of a set-off in the sum of $6,000 for defective workmanship and material.

The appellant was a farmer living at Gladstone, Henderson county. On September 1, 1920, he entered into a contract with appellee to purchase four 20x20 cement staved corncribs complete, less roof, with steel ventilators, and four steel doors on each crib. The cribs were to be erected on or before November 1, 1920. Appellant was to furnish all sand and gravel, to do all hauling and pay freight. Appellee was to do all work except the driveway floor. Appellant was to furnish material for the driveway floor and the appellee was to do all the work on the driveway floor and charge what the labor cost. All shipments of material were to be to Lone Tree, Illinois, via C., B. & Q. Ry. Co., f. o. b. Bloomington, Illinois. The price for each crib was $1,121 and the elevator was to cost $509.25. The work was not commenced until November 4, 1920, but three of the cribs were completed the second week in December, 1920. The fourth crib, above the foundation, was not completed until the latter part of January, 1921. It is claimed by appellant that the foundation for the fourth crib was put in during cold weather and was frozen, but appellee attempted to repair it. The staves were shipped from Oskaloosa, Iowa, instead of Bloomington. It is contended that the staves were shipped too green and on that account breakage occurred and delay was caused. The ventilators in the cribs were made of wood, and it is claimed that the steel frames of the doors were insufficient to bear the weight of the cement staves and by reason thereof the staves cracked and broke and caused the frames to bulge so that the doors could not be closed. After two of the cribs were filled with corn and the third one was partly filled they settled out of plumb, causing the

staves to crack or bulge, and the driveway between them cracked. It is contended that the cribs, after the corn was stored, continued to settle and, in order to save the structures, reinforcements were placed under the ventilators to prevent further settling. The evidence shows that the soil on which these cribs were built was loose or sandy and was what is known as "formative" in character and the settling of the cribs was because of the character of the soil.

The contention of appellant is that appellee, regardless of the character of the soil, was required, under the law, to place under each crib a foundation which was reasonably sufficient to maintain and support the cribs when subjected to the use for which they were intended, and because this was not done appellant was not liable to pay for the same. Appellee contends that the cribs were completed before any defects appeared and that the defects were caused by reason of the character of the soil under the foundation, and not caused by defective workmanship and material, and for this reason appellee was not liable for the settling. Cases are cited by each party in support of their respective contentions, but no good purpose would be served in reviewing them. Our attention has not been called to any Illinois cases in which the exact question here presented has been determined.

There is a distinction between cases where there is an injury to a building during the course of construction or where, during the construction, an unusual condition is discovered in the soil under the foundation, and cases where the building is completed and accepted and injuries occur after such completion. In the former case the contractor is liable for the damages and in the latter case he is not. As a general rule the builder is responsible for defects in the building which are caused by defects in the soil, or by weather conditions, notwithstanding the fact that the builder was bound by contract to follow the plans and specifi-

cations prepared by the architect. There are, however, exceptions to this rule. It has been held that the builder is not responsible for defects in a building where, by the fault of the owner, the builder is unable to overcome such defects in the soil; or where the builder has complied with his contract and the defects are subsequently caused by the nature of the soil or the action of the elements. 9 Corpus Juris, sec. 90-E, page 754; 9 Ruling Case Law, sec. 254, page 868; *Clark v. United States,* 6 Wall. 543; *Powell v. Markham,* 18 La. Ann. 581; *Duncan v. Cordley,* 199 Mass. 299, 85 N. E. 160, 17 L. R. A. (N. S.) 697; *Atlantic, Gulf & Pac. Co. v. Woodmere Realty Co.,* 156 App. Div. 351, 142 N. Y. Supp. 953; *Miller & Sons Co. v. Homeopathic, etc., Hospital of Pittsburg,* 243 Pa. 502.

In the case at bar, the contract, which was in writing, was very short and does not contain any specifications as to the kind of a foundation to be placed under the cribs. The appellant and his tenant selected the place where the cribs were to be built. They were staked out on the land thus designated, excavations were made and work begun on the foundations. Appellant objected that the foundations as they were being put in were not sufficient to support the cribs. After some talk between appellee's servants and appellant, the foundations were made larger and deeper. No further objections were made by appellant and three of the cribs were completed upon these foundations. There is very little evidence as to any defective workmanship or material in any of them. It was not until they were filled with corn that most of the defects complained of appeared. It seems to be conceded by appellant that most of these defects were the results of the character of the soil on which they were built. The wooden ventilators were substituted for steel ventilators by agreement. The elevator constructed was not as high as provided in the contract. One 3-foot section was not put on the top, but was left

off because it would have brought the elevator 20 feet above the cribs and the top could not be supported. The section was delivered and could be put on at any time appellant constructed the roof, which would permit the elevator to be anchored at the top. The top of the foundation of the fourth crib showed some evidence of frost but the frozen part was repaired before the crib was completed. Under the authorities cited appellee was not liable for any damages to the cribs after completion caused by the defective soil upon which they were built. The only other damage for which appellant could recover was the damage on account of the steel frames of the doors being insufficient to bear the weight of the cement staves, causing the staves to break and crack, the frames to bulge so the doors could not be closed, and the damage to the driveway. Evidence was offered as to the amount of these damages and this evidence shows a wide variance. The jury allowed appellant $441.50, which amount was within $151.30 of the amount which the weight of the evidence shows would be required to repair, the greater part of the damages complained of by appellant and for which he had a right to recover. We think appellant was allowed for all damages sustained by reason of any defective workmanship or material.

The third instruction given on behalf of the appellee told the jury that if the cribs settled after their construction and the settling was caused by the nature of the soil and not as the result of an insufficient foundation, then appellant could not recover damages for such settling. This instruction is in accordance with the law herein announced and no error was committed in giving it.

It is urged by appellant that the acceptance of work with latent defects does not bind the buyer to pay for same and several cases are cited in support thereof. The cases are not applicable because there was no latent defect in the cribs and even the appellant con-

cedes that the damage was caused by the settling of the structures by reason of the character of the soil on which they were built.

A witness called on behalf of the appellant was asked the following question: "If within two weeks prior to that, they had been found to be actually measured and were one inch and one-half out of plumb, tell the jury whether that would not indicate that they are not liable to settle." Objection was sustained to the question. No other questions were asked on that feature of the case and the appellant contends that by sustaining this objection the court improperly refused to permit the appellant to show that the cribs were continuing to settle. The objection was sustained because the question was indefinite, improper and called for a conclusion. The sustaining of the objection did not preclude appellant from asking any proper questions he might see fit to ask along the same line, and did not amount to a refusal by the court to permit evidence to be introduced on that subject.

The contract provided that appellant should pay the freight from Bloomington, Illinois, to the place where the cribs were to be built. The material was loaded at Oskaloosa, Iowa, and by instructions seven and eight the jury were told to charge the appellant with the freight from Oskaloosa, the point of loading. These instructions were not in accordance with the contract and should not have been given, but appellant was not injured thereby unless the freight from Oskaloosa was greater than from Bloomington. No evidence was offered as to the difference in freight. The difference, if any, would necessarily have been very small, and the jury may not have charged any part of it to appellant. We do not feel justified in reversing the case upon this error alone.

Appellant undertook to prove what it would cost to reconstruct a crib from the foundation. An objection was sustained and this ruling is assigned as error.

Appellant's witness, Parsons, a bank cashier, counted the cracked staves and reported that there were 104 cracked staves in the four cribs out of a total of 2,350 staves used in the construction. Included in these were 10 or 12 broken staves to which appellant's attention was called before they were put in. No witness testified to any damages resulting from the cracked staves, or how much less than the contract price the cribs were worth because of the cracked staves, or that the cribs were less serviceable or substantial on that account. Appellant in his brief states that he does not contend that the cribs were falling to pieces, but that substantial injury had resulted by reason of the improper foundations, which should be made good regardless of the condition of the soil. Under these circumstances, evidence of what it would cost to rebuild above the foundation was not a proper subject of inquiry and did not constitute a proper measure of damage.

We have only considered such points as have been argued by the appellant, and not finding any error the judgment will be affirmed.

*Judgment affirmed.*