ANTHONY EICHBERGER *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. KENNETH J. FOLLIARD, d/b/a K.J.F. Builders, Defendant-Appellee and Cross-Appellant.

Second District   No. 2—87—0681

Opinion filed May 6, 1988.—Rehearing denied June 6, 1988.

Newton E. Finn, of Waukegan, for appellants.

Ori, Tepper, Fox, Maley & Gilleran-Johnson, of Waukegan (Ivan H. Tepper, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, Anthony and Frances Eichberger, filed suit in the circuit court of Lake County seeking damages allegedly arising out of the construction of their new home by defendant, Kenneth J. Folliard, d/b/a K.J.F. Builders. Defendant filed a counterclaim seeking damages for unpaid amounts on the construction contract. The trial court granted defendant's motion for directed verdict on plaintiff's action, and the jury returned a verdict in favor of plaintiff on defendant's counterclaim. Plaintiff appeals the granting of the directed verdict in favor of defendant, and defendant cross-appeals the jury verdict in favor of plaintiff.

The two issues presented in this appeal are whether the trial court erred in directing a verdict in favor of defendant and whether the jury verdict in favor of plaintiff was against the manifest weight of the evidence.

Plaintiffs filed the instant action in the circuit court of Lake County. Following dismissal of two counts of their second amended complaint, the remaining count of the second amended complaint alleged that defendant breached express warranties of the construction contract in that he failed to construct the home in a workmanlike

manner and in conformance with local building codes. Defendant filed a counterclaim seeking as damages payment for the full contract price plus payment for extra work performed under the contract.

Plaintiffs purchased two adjacent lots in late 1983 or early 1984 for the purpose of having a home built on the lots. The lots abut a channel of water and are in a flood plain. There are various homes built on neighboring property on both sides of the channel.

In January 1984, plaintiff Anthony Eichberger contacted defendant after he learned that defendant was constructing a home on the opposite side of the channel. Plaintiff subsequently met with defendant for the purpose of discussing the construction of a home on plaintiffs' lots. Upon inquiry by plaintiff, defendant stated that he had been building in the area for approximately 10 years.

Following their initial meeting, plaintiff and defendant met on several occasions. Plaintiffs obtained building plans for a residence which they liked and asked defendant to change them to suit their desires. Eventually, defendant supplied plaintiff with modified building plans which both parties agreed would be used in building the home. On June 6, 1984, the parties entered into a written contract to build a home on plaintiffs' property. The contract contained the express warranty that "[w]e agree to perform all work as shown on the drawing in a workmanlike manner." The contract, which was prepared by defendant, prescribed 24-inch-wide footings.

During the preparation of the land and the construction of the home, plaintiff made numerous visits to the construction site. Plaintiff testified on direct examination that he visited the site while it was being cleared and graded and that he felt the ground shake during the leveling process. He asked defendant, "Is this going to be suitable for a house?" to which defendant replied, "Don't worry about it. We put in an extra-wide footing, and you will have no problems with the house, you know, sinking or anything." Approximately three to four days later, plaintiff again visited the home site and expressed concern to defendant about the suitability of the soil for building a home. According to plaintiff, defendant responded that he was aware of building in the area and that the house might sink, and that is why they used extra-wide footings.

Construction on the home continued into August 1984. At that time, workers who were installing carpet and floor tile advised plaintiff that the floors were sloping in some of the rooms of the home. Plaintiff testified that the home was about 90% complete at this time. Plaintiff proceeded to check the floors with a carpenter's level and discovered a slope in all rooms of the home, with the most severe be-

ing a 3½-inch slope in the front room.

Plaintiff contacted defendant the following day to advise him of the problem. Defendant responded that he was aware of the problem and would fix it. Plaintiff testified that defendant raised up the floor to level it, but that resulted in one of the walls being four inches shorter than the opposite wall. According to plaintiff, defendant took no other measures to remedy the sloping problem. Plaintiff also observed cracks in the foundation, cracks and slanting in the kitchen counter top, slanting of the oven and refrigerator, cracks in the wall board, cracks in the ceiling, difficulty in closing some doors, rain gutters that flowed away from the drain pipe, and inside drains that did not drain properly.

Plaintiff stated that he made all payments on the contract except the last two. As a result, on several occasions, defendant demanded full payment, but plaintiff refused to pay until the problems were corrected. According to plaintiff, defendant did no more work on the home, and plaintiff never made the final two payments under the contract.

In addition to the foregoing, plaintiff also presented two expert witnesses. Mr. Gerald Kissner, a soil engineer, stated that, based upon two soil boring samples taken from plaintiffs' property, the soil was not suitable for building a home unless pile foundations were used. He also stated that soil boring testing is necessary to determine if pile foundations are needed.

Mr. William Hooper, a structural engineer and architect, also testified on behalf of plaintiffs. Mr. Hooper conducted a physical examination of the home and stated at trial that the home had undergone differential settling which had caused the various problems which plaintiffs complained of. He also opined that the type of foundation utilized by defendant is not suitable for the soil types present on plaintiffs' property and, therefore, the house was not constructed in a workmanlike manner.

Following completion of plaintiffs' case, the trial court directed a verdict in favor of defendant. In doing so, the court stated that no evidence was presented as to the issue of conformity with local building codes. Furthermore, the court explained that the evidence offered by plaintiff failed to establish that defendant did not build the home in a workmanlike manner. The court noted that evidence of deficiencies in the soil composition, absent a contractual agreement that defendant have the soil tested, did not prove a lack of workmanlike performance under the contract.

The case continued on defendant's counterclaim, and the jury re-

turned a verdict in favor of plaintiffs. Plaintiffs now appeal the directed verdict on the issue of whether defendant performed in a workmanlike manner, but do not appeal the issue of whether the home conforms to local building codes. Defendant cross-appeals the jury verdict in favor of plaintiffs on the counterclaim.

■ We begin with defendant's cross-appeal. Defendant raises this point in a short two-sentence paragraph that is devoid of any citation of authority or reasoned argument. As such, we find this cursory statement of the issue does not sufficiently present the question for review, and the contention is waived pursuant to Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7); see *People ex rel. Aldworth v. Dutkanych* (1986), 112 Ill. 2d 505, 511, 493 N.E.2d 1037; *Deckard v. Joiner* (1970), 44 Ill. 2d 412, 419, 255 N.E.2d 900.

■ We address next the issue of whether the trial court properly directed a verdict in favor of defendant. A trial judge may direct a verdict "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

The narrow issue raised by plaintiffs' complaint is whether defendant breached the express warranty in the contract requiring him to build the home in a workmanlike manner. The parties both cite to a dated Illinois Appellate Court decision, *Portable Elevator Manufacturing Co. v. Dutton* (1922), 224 Ill. App. 123, as the only Illinois authority regarding damage to a structure and insufficient foundation resulting from the condition of the soil. The legal principles relied on in that case are inapposite to the warranty theory upon which this case is brought and is not helpful. The contract in this case contains the express warranty, "[w]e agree to perform all work as shown on the drawing in a workmanlike manner." Under the theory of recovery relied upon by plaintiffs in their complaint, the dispositive question is whether the builder, who built the house according to the building plans, breached the express warranty to perform in a workmanlike manner by utilizing the foundation provided in the plans when he knew or should have known that it was inadequate to properly support the house.

Defendant contends that he fulfilled his contractual obligation by building the foundation according to the specifications set forth in the building plans and that, since he followed the plans and they did not specify soil borings, he cannot be held liable for the failure of the foundation to adequately support the house. He agreed, however, not

only to perform all work indicated by the plans, but also to perform that work in a workmanlike manner. Under the facts of this case, it cannot be said that defendant performed the work required by the drawings in a workmanlike manner.

■ If a builder agrees to build a particular foundation for a house and that foundation fails to adequately support the house due to faulty construction by the builder, then it is fair to say that the foundation was not completed in a workmanlike manner. This is so because a foundation, by its very nature, is designed to support the house built upon it. We do not see any significant difference between a builder who builds a faulty foundation which results in the house sinking and a builder, under the circumstances here, who selects an improper foundation for the house, constructs it otherwise in a nondefective fashion, and yet the house still sinks. This is the case here, where defendant has knowledge or reason to know that the foundation which he has included in the building plans is inadequate for the type of soil upon which the house is built. Considering the special expertise that a builder should possess in matters of home building, it cannot be said that a builder who knows or has reason to know that a particular type of foundation is needed in a given situation and yet utilizes a less than adequate foundation has performed under the contract in a workmanlike manner.

This is not to say that every builder who builds a house upon a foundation which later proves to be inappropriate for the particular soil conditions will have breached a warranty to perform in a workmanlike manner. Rather, it is only the builder who knows or has reason to know that the particular soil condition upon which he is building requires a particular type of foundation that will have breached the warranty of workmanlike performance by continuing to construct a foundation which later proves to be inadequate due to the soil conditions. (See *Greneaux v. Castle I, Inc.* (La. App. 1981), 404 So. 2d 309.) Of course, a builder who knows or has reason to know that the soil conditions may require a unique foundation should notify the owner so that proper adjustments may be considered, which might include soil boring tests.

■ In this case, plaintiffs introduced evidence that defendant knew or had reason to know that the soil was such that the type of foundation included in the house plans would be inadequate to support the house. Defendant told plaintiffs that he had been building homes in that area for about 10 years and that he was familiar with the area. Furthermore, defendant supplied the modified building plans for the house and prepared the contract calling for 24-inch-wide footings.

Additionally, plaintiff testified that while at the building site he felt the ground shake when it was being graded and asked defendant if it was suitable for a house, to which defendant replied, "We put in an extra-wide footing, and you will have no problems with the house, you know, sinking or anything." Moreover, defendant told plaintiff that he was aware of building in the area and that he used extra-wide footings because of the possibility that the house might sink. This evidence was probative of whether defendant knew or had reason to know of the nature of the soil and the inadequacy of the foundation and was sufficient to withstand defendant's motion for a directed verdict.

Accordingly, we reverse the order of the circuit court of Lake County directing a verdict for defendant and remand for a new trial. As earlier stated, the portion of the judgment appealed in the cross-appeal is affirmed.

Affirmed in part, reversed and remanded in part.

NASH and UNVERZAGT, JJ., concur.