CHARLES J. GROENINGS *et al.*, as Cotrustees, *et al.*, Plaintiffs-Appellants, v. THE CITY OF ST. CHARLES *et al.*, Defendants-Appellees.

Second District    No. 2—90—1052

Opinion filed June 28, 1991.

Cowan & Minetz, of Chicago, and Roy A. Safanda, of Safanda & Brannen, and Robert F. Casey, both of St. Charles (Robert S. Minetz, of counsel), for appellants.

Clara Rubinstein, of Altheimer & Gray, of Chicago, and James D. Skaar, of Smith, Landmeier & Skaar, P.C., of Geneva (Kenneth C. Shepro and Allen L. Landmeier, of counsel), for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs appeal from orders dismissing their complaint for failure to state a cause of action and denying their subsequent motion to amend the complaint. The facts of this case, as alleged in the complaint, proposed amended complaint, and exhibits, disclose the following. The plaintiffs (Groenings) own approximately 80 acres of real estate located between, and contiguous to, the two defendants, City of St. Charles (St. Charles) and Village of Wayne (Wayne), in unincorporated Kane County. Both municipalities are non-home-rule units of government.

The Groenings petitioned to St. Charles for annexation of their property but were denied on February 20, 1989. On that same date St. Charles adopted an ordinance authorizing execution of a boundary agreement between itself and Wayne relative to the unincorporated territory, including plaintiffs' property, which lay between the two municipalities. Through the boundary accord the defendants essentially agreed to neither annex nor exercise zoning or subdivision control authority beyond the territory located on their respective sides of the boundary line established by the accord. The Groenings' property is situated on the Wayne side of the line. The resolution denying the Groenings' petition for annexation took into consideration the boundary agreement with Wayne and noted that, under the agreement, St. Charles was prohibited from annexing the Groenings' property. These

facts provide an adequate background for understanding the procedural history which follows. However, other pertinent facts will be presented in our discussion of the issues.

After the annexation petition was denied, the Groenings filed a five-count complaint against St. Charles and Wayne. Counts I, II, and III alleged various constitutional violations, sought to invalidate the Illinois statute which authorized the boundary agreement, and requested damages pursuant to section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1982)). In count IV plaintiffs asserted that defendants had tortiously interfered with their prospective economic advantage. Count V sought to void the boundary agreement or, alternatively, the enabling statute, as a matter of Illinois law.

Subsequently, the plaintiffs successfully moved to voluntarily strike their claims for money damages against Wayne. Both defendants filed motions to dismiss for failure to state a cause of action pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615). Following the parties' submission of memoranda and oral argument on the motions, the trial court dismissed all counts of the complaint and terminated the litigation.

The Groenings filed motions for leave to vacate, to allow an interlocutory appeal, and to file an amended complaint *instanter*. A proposed first amended complaint accompanied the motion for leave to amend. At the hearing on the motions, the trial judge inquired regarding the differences between the original complaint and the proposed amended complaint, heard the arguments of counsel, and reviewed the differences between the two complaints himself. After indicating that the amendment would not change his original conclusion that dismissal was appropriate, the judge denied all of plaintiffs' motions. The judge also stated that the proposed amendment should be part of the record for appellate review. The Groenings appeal from both the order dismissing their complaint and the order denying their motion for leave to amend the complaint.

■ A complaint should be dismissed for failure to state a cause of action only when it clearly appears that no set of facts could be proved under the pleadings which would entitle plaintiff to relief. (*Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61; *Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 970.) While a motion to dismiss admits all well-pleaded facts as true (*Teter v. Clemens* (1986), 112 Ill. 2d 252, 256), it does not admit conclusions of law or fact which are unsupported by allegations of specific facts which warrant those conclusions. (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 273.) If, after any conclusions found in the complaint

have been excluded, there are not sufficient facts to state a cause of action, the motion must be granted even though it may generally inform the defendant of the claim against him. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 426; *Towne v. Town of Libertyville* (1989), 190 Ill. App. 3d 563, 567.) In ruling on a motion to dismiss, allegations of the complaint are to be interpreted in the light most favorable to the plaintiff (*Payne*, 152 Ill. App. 3d at 273), but factual deficiencies may not be cured by liberal construction (*Knox*, 88 Ill. 2d at 427). The granting of a motion to dismiss for insufficiency of a complaint is within the sound discretion of the trial court. (*Town of Libertyville*, 190 Ill. App. 3d at 567.) The sufficiency of the Groenings' complaint will be judged by these standards.

Count V of plaintiffs' complaint turns on the issue of the validity of the annexation provision in the boundary agreement between Wayne and St. Charles. The Groenings' initial contention is that the provision is void because the two non-home-rule municipalities did not have the power to execute such an agreement.

Plaintiffs rely primarily on *Village of Long Grove v. Village of Kildeer* (1986), 146 Ill. App. 3d 979, in which Long Grove sought to enforce an annexation clause very similar to the one in dispute here. The parties had executed a boundary agreement, including a provision prohibiting either village from annexing beyond the jurisdictional boundary line, pursuant to section 11—12—9 of the Municipal Code (Code) (Ill. Rev. Stat. 1989, ch. 24, par. 11—12—9), which provided:

> "If unincorporated territory is within one and one-half miles of the boundaries of two or more corporate authorities that have adopted official plans, the corporate authorities involved may agree upon a line which shall mark the boundaries of the jurisdiction of each of the corporate authorities who have adopted such agreement."

This court noted that non-home-rule units possess only those powers granted to them by law or necessarily implied from or incident to powers expressly granted (*Long Grove*, 146 Ill. App. 3d at 980) and interpreted section 11—12—9 as not providing authority for that part of the parties' agreement which prohibited annexation. We held that the annexation provision was invalid.

Defendants correctly point out that *Long Grove* was decided in July 1986 and that in 1987 section 11—12—9 was amended by the addition of the following sentence:

> "On and after September 24, 1987, such agreement may provide that one or more of the municipalities shall not annex territory which lies within the jurisdiction of any other municipal-

ity, as established by such line." (Ill. Rev. Stat. 1989, ch. 24, par. 11—12—9.)

The Groenings acknowledge the language of the amendment but maintain that it does not apply to non-home-rule communities such as St. Charles and Wayne because it does not explicitly say that it so applies. In plaintiffs' words, if the legislature had meant to grant the power in question to non-home-rule units "it would have passed a law which stated that 'non-home rule units are authorized to enter into boundary agreements which prohibit annexation.' " As we read it, the crux of plaintiffs' argument is that the amendment of section 11—12—9 did not affect the holding of *Long Grove* and, therefore, the interpretation of section 11—12—9 as found in *Long Grove* is applicable to the boundary agreement executed by St. Charles and Wayne. This position is meritless.

First of all, we find the sequence of events involving the statute to be persuasive that the legislature amended section 11—12—9 in direct response to our *Long Grove* opinion. In *Long Grove* we concluded the municipalities lacked power to execute an annexation agreement because non-home-rule units have only the powers delegated to them by the legislature, and we could find nothing in the language of the statute which even referred to annexation, much less purported to regulate it. Too, section 11—12—9 appeared in a portion of the Code which is concerned with the planning function, as distinct from the annexation activity, of a municipality, and the statute reflected no intent to have an effect on the annexation statutes. Subsequently, the legislature added clear and specific language, not only referring to annexation but also empowering municipalities to agree to restrictions on their annexation activity. This language did not change the planning focus of section 11—12—9. Rather it seems to have been added as another planning tool which the legislature saw fit to provide to municipalities. In our view, it is reasonable to conclude from these facts that section 11—12—9 was amended in response to *Long Grove*.

Further, in interpreting section 11—12—9, the only relevant power we found to be lacking in non-home-rule municipalities was the power to include an annexation arrangement within a boundary agreement. The only reason the municipalities lacked that power was because it was not specified or necessarily implied in the statutory language. While we did not address the matter in *Long Grove*, the clear implication or, perhaps, underlying assumption of our finding was that all the powers which *were* specifically set forth in section 11—12—9 had been granted to non-home-rule units. We think that when the legislature later added annexation language it fully intended

to add the power to execute annexation agreements to the powers already enjoyed by non-home-rule municipalities pursuant to section 11—12—9. We can find nothing in our *Long Grove* decision which intimates that, in order for a law granting municipal power to be applicable to a non-home-rule unit, such law must expressly state that it applies to non-home-rule units. It is noteworthy in this regard that in *Village of South Elgin v. City of Elgin* (1990), 203 Ill. App. 3d 364, 370, we indicated that the relevant amendment to section 11—12—9 was "prompted by this court's opinion in [*Long Grove*]." *Long Grove* gives little support to the contention that section 11—12—9 did not authorize the agreement at issue.

■ Similarly, we are persuaded by the consistency of the language of section 11—12—9 as amended, that it is meant to empower non-home-rule municipalities to agree to impose restrictions on annexation activity. The section, which was originally added to the Code in 1961 (1961 Ill. Laws 576 (§11—12—9), added by 1961 Ill. Laws 2757 (§1), eff. August 4, 1961), granted to "corporate authorities" the power to enter into jurisdictional boundary agreements pertinent to nearby, unincorporated territory. At the time, prior to the 1970 Constitution, there was no distinction between home rule and non-home-rule municipalities. Consequently, the power was granted to all municipalities. Plaintiffs do not suggest that this power has since been taken away from non-home-rule municipalities. The amendatory language indicates that "such [boundary] agreements" may provide that "the municipalities" will not annex territory within each other's jurisdiction as established by the agreed-upon boundary line. Thus, the amendment became an integral part of the statute and, in our opinion, was intended to apply to the same "corporate authorities" as previously designated by the legislature. Since the earlier language referred to all municipalities, there is no reason to surmise the later language does not do likewise.

■ Our conclusion is also consistent with the changes effected by the 1970 Constitution relative to local government. Prior to adoption of the new constitution, all Illinois municipalities were "creatures of the legislature" (*Norwick v. Village of Winfield* (1967), 81 Ill. App. 2d 197, 199) which, essentially, had no powers other than what was delegated to them by the General Assembly (*Chicago School Transit, Inc. v. City of Chicago* (1966), 35 Ill. 2d 82, 83-84). The home rule provision of the 1970 Constitution, however, dramatically changed the nature of State-local relations. In *Kanellos v. County of Cook* (1972), 53 Ill. 2d 161, 166, our supreme court acknowledged this change. The court explained that the new constitution "conferred substantial

powers upon home-rule units" in regard to their own government and affairs "subject only to those restrictions imposed or authorized therein." (*Kanellos*, 53 Ill. 2d at 166.) In other words, the constitution basically shifted the inherent power to act on local affairs from the legislature to home rule units.

The power of non-home-rule units, on the other hand, continued to depend upon the legislature, and, without a grant of power, the local government could not act. (*Pesticide Public Policy Foundation v. Village of Wauconda* (1987), 117 Ill. 2d 107, 111-12; *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 31.) We think it is reasonable to conclude that, since its position *vis-a-vis* non-home-rule governments was unaltered, the legislature continued to delegate power to such units in the same language it had always used.

The language of pre-1970 laws delegated power to municipalities as an undifferentiated group since all municipalities were alike in terms of the source of their power. After 1970, however, as a general rule only non-home-rule units needed grants of power from the legislature. Under these circumstances it is highly unlikely the lawmakers saw any need to indicate expressly, within the statutes themselves, that a given piece of legislation was directed to non-home-rule units. The unaltered character of the relationship between the State and non-home-rule units is persuasive that the amendment to section 11—12—9 applies to Wayne and St. Charles every bit as much as does the rest of the section and all the other pre-1970 statutes which do not specify that they are intended as power grants to non-home-rule communities.

Having concluded that the disputed boundary agreement was authorized, we next consider plaintiffs' attack on the authorizing statute. The Groenings urge that if section 11—12—9 authorized the defendants' boundary agreement, then that section of the statute is invalid because it conflicts with a number of principles of Illinois municipal law. Some of plaintiffs' contentions are based on constitutional grounds which will be discussed below. However, under Illinois law plaintiffs assert that the boundary agreement conflicts with section 7—1—8 of the Code (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8), which provides for voluntary annexation of territory to a municipality pursuant to a petition filed with the village clerk. The section states:

> "The corporate authorities of the municipality to which annexation is sought shall then consider the question of the annexation of the described territory." (Ill. Rev. Stat. 1987, ch. 24, par. 7—1—8.)

Plaintiffs contend that this language requires a municipality to consider petitions for annexation while the boundary agreement prohibits consideration of their petition to St. Charles. As a result of this contradiction, according to plaintiffs, the boundary agreement should be declared void. This argument is not persuasive.

■■ To begin with, St. Charles' resolution denying plaintiffs' request for annexation, which is attached to plaintiffs' complaint as an exhibit, reflects that plaintiffs' petition for annexation was considered by the St. Charles corporate authorities. The resolution makes note of a defect in the petition, refers to the boundary agreement with Wayne, and sets forth reasons why annexation would not be in St. Charles' best interest. Under these circumstances we cannot say St. Charles did not consider the question of annexation as called for in section 7—1—8. Moreover, the boundary agreement, which is also attached as an exhibit to the complaint, indicates that Wayne and St. Charles agreed they would not act to annex beyond the boundary line established by the agreement except as specified by the agreement itself or "upon subsequent joint written agreement" between the parties. Neither defendant agreed that it would *never* contemplate a requested annexation, even if the property involved lay outside its jurisdictional boundary. Section 7—1—8 calls for consideration of annexation petitions by a municipality. The boundary agreement, which provides that the parties can agree to an annexation contrary to the agreement, does not prevent such consideration. We perceive no conflict with section 7—1—8.

■■ Plaintiffs also complain that the boundary agreement conflicts with section 7—1—13, which allows a municipality to annex only up to 60 acres without the property owners' consent. According to plaintiffs, since Wayne cannot legally annex their property without their consent, it should not be able to require them to annex to Wayne through a boundary agreement. There is no foundation for this argument. Prior to the boundary agreement, plaintiffs had three possible options as revealed by the record. They could annex to St. Charles, annex to Wayne, or remain unincorporated in the county. Since the boundary agreement, plaintiffs still have two of the three options open to them—voluntarily annex to Wayne or remain in the county. Despite plaintiffs' insinuations, Wayne is not in a position to require them to annex. We note that plaintiffs offer no authority for the assertion that Wayne can require annexation of their property. Since Wayne can neither forcibly annex plaintiffs' property nor require annexation by plaintiffs, we are hard-pressed to see how the boundary agreement conflicts with the statute.

■ Plaintiffs further claim that, even if the statute is found to be valid, they should have been allowed to show that defendants did not comply with the conditions of the statute. Specifically, plaintiffs' original complaint speaks of defendants' "gerrymandered boundary line." However, plaintiffs give no facts to show either what they mean by "gerrymandering" in this context or that such an activity occurred. The complaint refers to exhibit "B," which is the boundary agreement between Wayne and St. Charles. Neither the exhibit standing alone, however, nor the attached map of the boundary line demonstrates that plaintiffs' property was "gerrymandered," whatever is meant by that term. In fact, as far as we can determine, the exhibit does not even depict the location of plaintiffs' property. Also, we are unable to find any condition in the statute pertaining to "gerrymandering." Regarding the boundary line, the statute says only that "the corporate authorities involved may agree upon a line which shall mark the boundaries of the jurisdiction of each of the corporate authorities who have adopted such agreement." In their original complaint plaintiffs alleged nothing to show that the defendants did not follow the statute in establishing the line between them.

To summarize, plaintiffs' count V turned on questions regarding the application and validity of, and compliance with, section 11—12—9. We have found that defendants' conduct was authorized by a valid statute and that the complaint alleges nothing to adequately show noncompliance. Therefore, we conclude that no set of facts could be proved under count V which would entitle plaintiffs to relief, and dismissal of the count was proper. *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61.

■ Count IV of plaintiffs' complaint alleged a "Breach of Prospective Economic Advantage." In this count plaintiffs assert that "defendants' conduct constitutes tortious interference with the plaintiffs' prospective economic advantage" but do not allege any new facts. In their appellate brief plaintiffs correctly set forth the elements of the tort they allege, state that the tort is recognized by Illinois courts, and summarily conclude by stating, "[t]he plaintiffs' complaint establishes the elements of this tort claim; and, therefore, Count IV should not have been dismissed." We are given no clue as to how each element of the tort is established by the factual allegations of the complaint, or even which facts support which element. And we certainly are not offered any supporting argument. It is beyond question that points raised in a party's brief but not argued or supported with authority may be deemed waived for purposes of review. (134 Ill. 2d R. 341(e)(7); *People v. Dinger* (1990), 136 Ill. 2d 248, 254; *Eich-*

*berger v. Folliard* (1988), 169 Ill. App. 3d 145, 149.) A reviewing court is entitled to have issues clearly defined with relevant authority cited and logical arguments presented, and arguments not adequately presented on appeal may be waived. (*Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 401; *Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 1087.) This court is not a depository in which a party may dump the burden of argument and research. (*Pecora v. Szabo* (1982), 109 Ill. App. 3d 824, 825.) Plaintiffs' argument regarding count IV is waived.

We turn now to the Groenings' contention that, if, as a matter of Illinois law, section 11—12—9 provided authority for the annexation provision in the defendants' boundary agreement, then the statute should be found unconstitutional as applied to their property. The argument urged by plaintiffs goes something like this. They very much anticipated and believed it reasonably likely that St. Charles would annex their property. However, as a result of the boundary agreement, St. Charles has refused to either annex or extend municipal services to their property. Consequently, if they wish to annex at all, or to procure public services, they now have no choice but to annex to Wayne and thereby will be forced to "concede to any and all development demands" made by Wayne. This circumstance deprives them of the reasonable use of and the right to develop their property as they wish. The reason they are so deprived is because, absent annexation to St. Charles, or access to St. Charles' superior municipal services, the value of their property has decreased. Specifically, plaintiffs cite St. Charles' superior fire and police services; the inability of Wayne and the corresponding ability of St. Charles to provide water and sewer services; St. Charles' superior tax base; and St. Charles' development plan, which will give them greater flexibility in developing their property. Finally, plaintiffs emphasize that they had neither input to nor any recourse from the boundary agreement, even though it had this negative effect on their property.

Plaintiffs assert in count I of their complaint that the infringement of their property interest, as just described, is sufficient to constitute a violation of their rights to procedural due process, substantive due process, and equal protection. Count II prays for a declaratory judgment that the boundary line agreement is void and the enabling statute is unconstitutional. Plaintiffs posit in count III that their property was taken without due process in violation of the "takings" clauses of the fifth and fourteenth amendments. We will address each of plaintiffs' claims in turn.

■ Plaintiffs complain that they had neither notice of nor the opportunity to object to the boundary agreement and were thereby denied the process due them. In determining whether a party is entitled to due process, either substantive or procedural, he must first establish the existence of a liberty or property interest. (*Smith v. Board of Education* (7th Cir. 1988), 853 F.2d 517, 520.) To have a property interest a person must have more than a unilateral expectation of it; rather, he must have a legitimate claim of entitlement to it. (*Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; *Creekside Associates, Inc. v. City of Wood Dale* (N.D. Ill. 1989), 684 F. Supp. 201, 204.) It is on this most fundamental element of a procedural due process claim, *i.e.*, the nature of the interest at stake, that plaintiffs' search for relief falters.

■ Plaintiffs' ultimate position is that they have been injured because the boundary agreement blocks the annexation they seek, thus causing a decrease in the value of their property. However, plaintiffs can assert nothing to show for sure that St. Charles would have annexed their land if there had been no boundary agreement. St. Charles is under no obligation to annex plaintiffs' property (see *Kaltsas v. City of North Chicago* (1987), 160 Ill. App. 3d 302 (and cases cited therein)), and plaintiffs do not contend that the right to develop their property includes a right to annex to St. Charles. Thus, plaintiffs cannot say that they hold what amounts to an entitlement to annexation itself. Also, while it is clear that the Groenings have an interest in increasing the value of the land through annexation, we can think of no circumstances in which such an interest, standing alone, could be characterized as an entitlement rather than an expectancy.

Evidently recognizing the need for a more viable basis for their claims, the Groenings make a rather sketchy argument that their protected interest is the right to petition for annexation and that this interest has been raised to the level of an entitlement by the Illinois statute which provides for annexation by petition. Since it is an entitlement, the argument goes, the right to petition may not be denied without notice and a hearing. Under the circumstances of this case, plaintiffs' contention makes little sense. According to their complaint they did, in fact, petition for annexation. To the extent the statute gives them the right to so petition, they exercised that right. Too, plaintiffs cite no authority, and we have found none, for the proposition that the right to petition for annexation is a protected entitlement. We conclude that the right asserted by plaintiffs does not amount to an entitlement and is not sufficient to sustain a due process challenge to section 11—12—9.

■■■ We next consider plaintiffs' substantive due process challenge. The application of land use regulations offends substantive due process rights if such application is arbitrary, unreasonable, or capricious and does not bear a substantial relationship to the public welfare. (*Safanda v. Zoning Board of Appeals* (1990), 203 Ill. App. 3d 687, 695.) This statement of principle assumes that application of the regulation is sufficiently intrusive on the plaintiff's right to use his property to trigger a constitutional inquiry. In this case we do not think plaintiffs have alleged any such intrusion.

Plaintiffs posit that, as a result of the boundary agreement, their right to the reasonable use of their property has been infringed. This cannot be so. The boundary agreement was just that—an *agreement* regarding the municipalities' *future* conduct and nothing more. Neither St. Charles nor Wayne did anything to affect the use of the property one way or another. At all times the Groenings' land has been located in the county and subject to county regulations. The uses of the property currently possible within the county have not changed. Also, the agreement neither caused the plaintiffs' property to be annexed to Wayne, nor to be deannexed by St. Charles. At the very most, the only thing that has changed is the viability of plaintiffs' opportunity for annexation to St. Charles. All the plaintiffs can say regarding damages is that, due to the agreement, they may not be able to get as much money out of their property as they possibly could have if it were annexed by St. Charles. What plaintiffs really seem to want is for St. Charles to *act* to *increase* the value of their property. This St. Charles is not obligated to do.

Plaintiffs' argument assumes that their property rights include an unassailable right to do that which will increase the value of their land. We note that the cases invoked by plaintiffs in this regard are zoning cases. In zoning cases, however, the *actual use* of property is denied or limited by the offending regulation. (*State of Washington ex rel. Seattle Title Trust Co. v. Roberge* (1928), 278 U.S. 116, 73 L. Ed. 210, 49 S. Ct. 50 (zoning ordinance made specific use contingent on consent of two-thirds of neighboring owners); *Nelson v. City of Rockford* (1960), 19 Ill. 2d 410 (application of zoning ordinance unreasonably restricted use to one and two family residences); *Trust Co. v. City of Chicago* (1951), 408 Ill. 91 (amendment to ordinance unreasonably down-zoned property for benefit of only a few residents); *DeMarie v. City of Lake Forest* (1981), 93 Ill. App. 3d 357 (refusal to rezone unreasonable where owner heavily impacted by present zoning and rezoning would benefit public interest); *Kraegel v. Village of Wood Dale* (1973), 10 Ill. App. 3d 486 (refusal to allow 23 units more than allowed by zoning

ordinance unreasonable where ordinance allowed similar densities and proposed use would benefit community); *Brown v. Board of Zoning Appeals* (1959), 21 Ill. App. 2d 273 (variance from zoning ordinance unreasonably denied where petitioners met requirements for variance, no detriment to public good shown, and denial depreciated value of plaintiff's property).) In each instance a municipality either took some distinct action or refused to act in a manner which had an identifiable, negative effect on the plaintiff's right to use his property. In contrast, the action taken by St. Charles and Wayne had no effect on the Groenings' existing rights to use their property. The present zoning and/or uses of the land remained exactly as they had been before the agreement. No new regulations or restrictions were imposed. No existing permissible uses were denied or limited. The zoning cases give little support to plaintiffs' position.

The only effect of the boundary agreement on the Groenings was that they lost one option, not for the *use* of their land, but as to which community they wished to join, along with the corresponding effect on the value of their land. Even that option was never more than an expectation since St. Charles could have decided not to annex the property even without the boundary agreement. The deprivation suffered by plaintiffs was highly speculative at best. Even if we assume that St. Charles would have annexed them absent the agreement with Wayne, the only benefit lost as a result of the agreement was the increased value they allegedly would have enjoyed. While economic effect may be a factor in zoning cases (see *DeMarie v. City of Lake Forest* (1981), 93 Ill. App. 3d 357, 363), as we have pointed out, those cases affect land use. This case presents something even less than a land use issue. Deprivation of mere hoped-for economic gain is, in our opinion, a minimal incursion, if it is an incursion at all, into plaintiffs' property rights. As such, it is not a deprivation in the constitutional sense and does not raise due process concerns. See *Coniston Corp. v. Village of Hoffman Estates* (7th Cir. 1988), 844 F.2d 461, 466.

Plaintiffs' next contention, an equal protection claim, is based on allegations that, but for the boundary agreement, St. Charles would consider their annexation petition, or, alternatively, their request for municipal utility services, in the same manner it considers such requests from other petitioners. Plaintiffs urge that they are being treated differently from similarly situated landowners in the unincorporated area between Wayne and St. Charles since some of those owners are receiving services from St. Charles. We believe we have already addressed plaintiffs' contention regarding their petition

for annexation. Plaintiffs did petition, and St. Charles did consider the petition. The complaint makes no factual allegations showing how the consideration given their petition differed from that given to other petitions.

As to the Groenings' contentions regarding provision of services, the complaint alleges that as a result of the boundary line agreement St. Charles will not provide sewer, water, fire protection, police protection, road maintenance, or other municipal services to the plaintiffs' property. St. Charles points out, and review of the complaint confirms, that plaintiffs did not allege that they ever applied for such services. Plaintiffs' only response is that St. Charles' summary denial of their annexation request supports the allegation. We have carefully examined St. Charles' "Resolution Denying a Petition for Annexation (Groenings)," as it is found in the record, and observe that it is limited to discussion of the petition for annexation. There is nothing in the resolution to indicate that St. Charles was either asked to or refused to extend services to the Groenings' land. In their reply brief plaintiffs propose that it would have been a useless act for them formally to request services, but again do not explain why. We think the allegation that St. Charles will not provide services is an unsupported conclusion of fact which we need not take as admitted (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 273). Standing alone, plaintiffs' insistence that St. Charles will not service their property is not enough to trigger constitutional equal protection.

Even if we accepted plaintiffs' allegations regarding St. Charles' refusal to annex their property, we still could not find that their complaint stated a cause of action for violation of their equal protection rights. A legislative enactment challenged on equal protection grounds is presumptively valid unless it impinges on a fundamental right or a suspect classification (*In re Estate of Karas* (1975), 61 Ill. 2d 40, 47) and will be upheld if it is rationally related to a legitimate governmental purpose (*Triple A Services, Inc. v. Rice* (1989), 131 Ill. 2d 217, 226). Plaintiffs do not allege that they are members of a suspect class. Nor do they appear to argue that their interest amounts to a protectable, fundamental right. In fact, while plaintiffs' initial brief cites numerous cases, it neither explains how the principles of those cases are applicable to this case nor makes any argument based on the cited cases. In their reply brief, regarding this issue, plaintiffs do nothing more than attempt to distinguish defendants' authorities. Nevertheless, we look beyond plaintiffs' brief to the substance of their argument.

In an equal protection challenge the burden of rebutting the presumptive validity of the legislative classification is upon the party bringing the challenge. (*Karas,* 61 Ill. 2d at 47-48.) Plaintiffs' complaint does not reflect an ability to carry the necessary burden. The resolution denying the Groenings' annexation petition is attached as an exhibit to the complaint. In the resolution, the St. Charles city council found that the annexation of the Groenings' property would not promote the sound planning and development of the city. This finding was supported by a number of persuasive reasons. Plaintiffs' allegations pertaining to equal protection do not address these reasons or attempt to show in any way that they are not rationally related to a legitimate governmental purpose. Thus, we conclude that the claims in the complaint are conclusional where they state, with nothing more, that St. Charles' refusal to deal with plaintiffs is "arbitrary and unreasonable" and "bears no substantial relationship to the public health, safety or welfare" of St. Charles. Such legal conclusions are insufficient to rebut the presumption that St. Charles' conduct in denying the Groenings' petition for annexation was valid. All in all, plaintiffs' complaint does not state a cause of action for violation of equal protection rights.

▆▆▆ The Groenings' last constitutional contention is that defendants have taken their property without paying for it. Count III alleges that St. Charles' conduct, along with the boundary agreement, "effectively deprived the plaintiffs of the reasonable use of their property" in violation of the fifth and fourteenth amendments to the United States Constitution. Plaintiffs' appellate brief, however, does not discuss whether the complaint states a cause of action for taking and, in fact, fails even to set forth the elements of a taking claim. Instead, plaintiffs make a series of conclusionary, and sometimes accusatory, statements, with no citation to the record or supporting authority. The balance of plaintiffs' appellate argument focuses exclusively on the question of damages. Consequently, we are given little in the way of substance regarding plaintiffs' taking challenge. However, we note that the complaint itself focuses heavily on the allegation that plaintiffs are deprived of the reasonable use of their property. As we have already discussed, this is simply not so since the boundary agreement affected only the way plaintiffs hoped to incorporate their land, *not* its present possible uses. More significantly, plaintiffs make no factual allegations that they cannot reasonably develop their property in Wayne or in the county. Thus, we are not persuaded that count III states a taking cause of action.

In summary, we find that no set of facts could be proved under counts I, II, or III of the complaint which would entitle plaintiffs to relief. Accordingly, the trial court did not abuse its discretion in dismissing those counts. *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61.

Plaintiffs appeal also from the trial court's denial of their motion for leave to amend the complaint. The record indicates that, before he denied the motion, the trial judge reviewed the differences between the original and the proposed amended complaint. The court subsequently directed that plaintiffs' proposed complaint be included in the record for appellate review. Plaintiffs insist that they should have been allowed to file their amended complaint. It appears to us that, for all practical purposes, they were allowed to file. The trial court reviewed the amended complaint, and it is now before us for review. Obviously, the trial court found that plaintiffs' complaint still did not state a cause of action.

We have studied the proposed amended complaint. While it requests additional relief, it does not add any new or different causes of action or any decisive new facts. Defendants acknowledge that plaintiffs added a factual allegation that the boundary line agreement should be declared invalid because the defendants failed to give adequate consideration to the natural flow of storm water drainage. Municipalities are required to give such consideration when arriving at an agreement for a jurisdictional boundary line pursuant to section 11—12—9. However, defendants also note that the agreement itself, which was attached by plaintiffs as an exhibit to their proposed amended complaint, states:

> "WHEREAS, the corporate authorities of St. Charles and Wayne have given consideration to the natural flow of storm water drainage, ***."

Where there is a conflict or discrepancy between the pleaded facts and facts set forth in attached exhibits, the exhibits are controlling and a motion to dismiss does not admit allegations in conflict with facts disclosed by an exhibit. (*Sangamon County Fair & Agricultural Association v. Stanard* (1956), 9 Ill. 2d 267, 276; *Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 1060; *Hardy v. Montgomery Ward & Co.* (1971), 131 Ill. App. 2d 1038, 1043-44.) Here there is a direct conflict between plaintiffs' allegation and the statement made in the agreement. Accordingly, it was not enough for plaintiffs merely to assert a contradictory conclusion. They needed to set forth facts to show in what manner defendants' consideration of storm water drainage was inadequate.

We conclude that the proposed amended complaint was no more effective than the original complaint in showing that a set of facts could be proved which would entitle plaintiffs to relief. Thus, the trial court did not abuse its discretion when it terminated the litigation.

As a final matter, we consider certain motions which were ordered to be taken with the case. The Groenings moved to strike part of each defendant's brief. Specifically, they ask that we strike the appendix and a footnote of St. Charles' brief. Both the appendix and footnote refer to a judgment order in another case involving the Groenings' property. Plaintiffs posit that the references are outside the record of this case and constitute an improper attempt to prejudice their rights. In an objection to the motion St. Charles states that the Groenings' request is untimely and an attempt to supplement their reply brief. Defendants urge that the matters raised in the motion, which was filed more than a month after plaintiffs' reply brief, could have been, but were not, raised in the reply brief.

We perceive no persuasive reason to grant plaintiffs' motion. The material plaintiffs find objectionable in St. Charles' brief is obvious and apparent. Defendant made no attempt to disguise its use of the prior judgment order. Nor did defendant claim or try to show that the order was relevant to disposition of the issues in this case. While we do not approve of defendant's use of what appears to be an essentially extraneous judgment order, plaintiffs did not mention the matter in their reply brief and do not now explain why they delayed in bringing it up. Their motion does not delineate, and we cannot discern, how they are prejudiced by defendant's reference to the prior judgment. (See *South v. Franzen* (1980), 90 Ill. App. 3d 595, 599-600.) Under these circumstances we think plaintiffs have waived their objection to St. Charles' brief. The motion is denied.

Plaintiffs also request that a statement in Wayne's brief, asserting that the plaintiffs have not made any rezoning requests to St. Charles, be stricken on the ground that there is no support in the record for the statement. Alternatively, plaintiffs ask leave to supplement the record with an affidavit and exhibits showing that they did, in fact, ask St. Charles for rezoning. Like St. Charles, Wayne objects to the untimely filing of the motion. Wayne also contends that the challenged statement is not inconsistent with the record and urges that it is a belated attempt to amend plaintiffs' complaint. We need not address the questions raised by these claims because we agree with Wayne that the matter of a zoning request by plaintiffs is irrelevant to the issues before us, and the statement by Wayne, even if it is erroneous, is innocuous and causes no prejudice to plaintiff. Plaintiffs'

tardy effort to eliminate that statement does not warrant the relief requested. The motion to strike is denied.

Based on the reasoning set forth above, the orders of the circuit court of Kane County which terminated this litigation are affirmed.

Affirmed.

GEIGER and WOODWARD, JJ., concur.