FLORENCE RYNN, Plaintiff-Appellant, v. WILLIAM OWENS *et al.*, Defendants-Appellees.

First District (1st Division) No. 1—88—0486

Opinion filed March 27, 1989.—Rehearing denied May 1, 1989.

James R. Platt and Robert D. Shearer, both of Chicago, for appellant.

Flynn, Murphy & Ryan, of Chicago (Richard T. Ryan, Emmett J. Galvin, and Mark F. Smolens, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Florence Rynn sued her nephew, defendant William Owens, for conversion of funds held in four bank accounts established by Mary Tamborine, now deceased. Rynn appeals a summary judgment order that the funds from two of four accounts be divided equally between Rynn and Owens. For the reasons below, we affirm.

In 1986, Mrs. Mary Tamborine, Rynn's sister and Owens' aunt, used money she inherited from her husband to open four bank accounts. On March 10, Mrs. Tamborine opened two accounts at the Colonial Bank & Trust Company in Chicago (CB&T), savings account No. 87496—6 and savings account No. 87497—4. On March 17, Mrs. Tamborine opened checking account No. 63—112—4 at CB&T (the checking account). On June 12, Mrs. Tamborine opened savings account No. 757208—80 at the Midwest Bank & Trust Company in Chicago (the MB&T account).

Title to all four accounts was held by "Mary Tamborine or William Owens or Florence Rynn." Tamborine and Owens had signed the bank signature cards for all four accounts, but Rynn had signed only for CB&T account No. 87497—4 and the MB&T account. Although Rynn had not signed the signature card for the checking account, CB&T paid checks that she drew on the account. The signature cards contained a survivorship agreement that bound the signing parties.

On February 21, 1987, Mrs. Tamborine suffered a stroke and was hospitalized until her death on March 15, 1987. On March 2, 1987, Owens withdrew the funds from the CB&T savings accounts and the MB&T account, a total of $296,627.30, and redeposited the money in two savings accounts at CB&T, held in his and his wife's name. On March 6, 1987, Rynn withdrew the funds from the checking account,

approximately $11,300, by writing a check to herself.

On May 11, 1987, Rynn filed a verified complaint against Owens, alleging that Rynn and Owens were joint tenants in the accounts and that Owens had converted the funds. Rynn demanded half the funds from the three savings accounts. On June 24, 1987, Owens filed an answer, denying that Rynn had any interest in account No. 87496—6. Owens also filed a counterclaim, alleging that Rynn had improperly withdrawn funds from the checking account and demanding the return of the $11,300.

On August 6, 1987, Rynn moved for summary judgment, arguing that she and Owens were in "equal status" as to the funds in the four accounts and asking the court to award her half the money from all four accounts. On September 11, 1987, Owens moved for summary judgment on the counterclaim, asking return of the money taken from the checking account. Owens also moved for partial summary judgment, arguing that Rynn was entitled to no money from savings account No. 87496—6, and demanding return of the $11,300 that Rynn had withdrawn from the checking account.

On November 9, 1987, Rynn answered Owens' counterclaim and filed a verified amended complaint. The amended complaint was filed without leave of the court. Leave was later granted as part of the summary judgment order of December 17, 1987. The amended complaint alleged that Owens was only a joint custodian of the accounts, and therefore had no interest in the funds in any of the accounts, and that Owens had breached a fiduciary duty. Rynn asked for all of the money from all four accounts.

On November 10, 1987, Rynn took the evidentiary deposition of Father Joseph Christ. Father Christ stated that for many years he had been a friend and confidant of Mrs. Rynn and Mrs. Tamborine, that Mrs. Tamborine had told him that she wanted Mrs. Rynn to have all of her money, and that she had put the money in the accounts to prevent Mrs. Rynn's estranged husband from getting at the money. Father Christ further stated that Mrs. Tamborine had told him that Mr. Owens, who was executor of Mrs. Tamborine's will, was named on the accounts only as a trustee or guarantor and that Mrs. Tamborine did not intend for Mr. Owens to receive any of the money from the accounts. Father Christ's deposition formed the basis for the allegations of the amended complaint. Owens' attorneys received the amended complaint on November 12, 1987, and moved to strike it on December 4, 1987.

On December 14, 1987, a hearing was held on Rynn's motion for summary judgment. The trial court ruled that, based on the signature

cards of the four accounts, Rynn and Owens were each entitled to half the funds from CB&T account No. 87497—4 and the MB&T account. Rynn's share was reduced by the amount taken from the checking account, $11,300. The outstanding $11,300, as well as the money from the remaining two accounts, was to be held in trust pending further order of the court. Rynn was granted leave to file the amended complaint *instanter*. These rulings were stated in an order dated December 17, 1987.

On December 22, Rynn filed an emergency motion to vacate the summary judgment order. Rynn's attorney, Mr. Platt, also requested that the court enter a disbursement order before the summary judgment order became final on January 17, 1988. Both the motion and Mr. Platt's request were denied.

On January 28, 1988, after expiration of the 30 days for notice of appeal, an agreed order for release of the funds, signed by attorneys for both parties, was given to the trial court. Mr. Platt indicated to the court that no appeal had been filed, and accordingly, the trial court ordered disbursement of the funds. On February 19, 1988, Rynn filed a motion for a late notice of appeal with this court, pursuant to Supreme Court Rule 303(e) (87 Ill. 2d R. 303(e)). The motion was granted, and late notice of appeal was filed on February 26.

At a hearing on March 3, 1988, the trial judge barred Mr. Platt from practicing in his courtroom because the judge felt that on January 28, Mr. Platt had induced disbursement of the funds by misrepresenting to the court his intention not to file an appeal.

Rynn argues that the summary judgment order was improper because no motion was before the court to award any of the money to Owens and because Father Christ's evidentiary deposition raised material issues of fact concerning the donative intent of Mary Tamborine. Rynn further argues that the trial judge was improperly prejudiced against Mr. Platt, and in a separate motion, asks for substitution of judges on remand. Both contentions are without merit. The trial court correctly ruled based on the motion and pleadings before it, and the record shows no evidence of prejudice towards Mr. Platt.

◼◼ ◼ The motion for summary judgment was based on Rynn's original complaint, although the amended complaint was subsequently filed. Amended pleadings ordinarily supersede prior pleadings, but a well-recognized exception exists where, as here, the original pleading was verified. Verified pleadings remain part of the record, and any admissions not the product of mistake or inadvertence become binding judicial admissions. (*American National Bank & Trust Co. v. Erick-*

*son* (1983), 115 Ill. App. 3d 1026, 1029, 452 N.E.2d 3, *appeal denied* (1983), 96 Ill. 2d 558.) Here, the original complaint alleged joint tenancies in the bank accounts. Because the amended complaint did not assert that the allegations in the original complaint of joint tenancies were the product of mistake or inadvertence, they stand as judicial admissions. The motion for summary judgment was therefore determined by whether the facts and admissions in the original complaint supported Rynn's assertion that she was entitled to half the funds in the four accounts.

Title to each of the accounts was held by Tamborine, Rynn, and Owens, as joint tenants. The right of survivorship, however, existed only among the parties who had signed the bank signature cards. (See *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850; *Doubler v. Doubler* (1952), 412 Ill. 597, 107 N.E.2d 789; *Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 345 N.E.2d 503.) Thus, when Mrs. Tamborine died, Rynn held survivorship rights only in the accounts where she had signed the signature card, the MB&T account and CB&T account No. 87497—4. Because the money had been taken from the accounts, the trial court ordered distribution of the funds.

■ Rynn further contends that Father Christ's evidentiary deposition raised issues of material fact concerning Mrs. Tamborine's donative intent and that the proper disposition of the funds not awarded to Rynn remains in dispute. This argument is irrelevant. The motion for summary judgment was based on the original complaint, which raised no issue concerning donative intent. Had Rynn sought to raise the issue of donative intent, the motion for summary judgment should have been withdrawn. Mr. Platt made no attempt to amend or withdraw the motion.

■ For similar reasons, the argument that Rynn was prejudiced because Mr. Platt was not given adequate opportunity to argue the issues raised by Father Christ's deposition testimony must also fail. Mr. Platt knew of the content of Father Christ's deposition, apparently before it was taken, since Mr. Platt filed the amended complaint on November 9, 1987, and the deposition was not taken until November 10. Mr. Platt had ample opportunity to withdraw the motion for summary judgment, which was based on the original complaint, but chose not to. Rynn's arguments attempt to assign error to the trial court for Mr. Platt's mistake in not withdrawing the motion for summary judgment after the amended complaint was filed. The trial court is not accountable for the strategic errors of counsel. We further note that Mr. Platt had the opportunity to argue the facts and theories of his amended complaint. The trial court did not consider them appro-

priate, however, and rejected them.

■ The trial court's ruling, moreover, determined the rights of the parties with respect to all of the funds. The summary judgment order was in effect a partial summary judgment, because it reserved matters for later disposition by the court. But the order was based on the finding that Mrs. Rynn enjoyed survivorship rights only in the accounts for which she had signed, the theory set forth by the original complaint. Logically, Mrs. Rynn holds no rights to any of the funds from the remaining accounts. Thus, the rights of the parties were determined with respect to all the funds. Because we hold that the trial court ruled correctly on the theory of the original complaint, and that ruling disposed of all of the issues in the case, the amended complaint, which supports an alternative, incompatible theory, is now moot.

■ Rynn's second principal argument is that the trial court's ruling on the motion for summary judgment was improper because the trial court was prejudiced against Mr. Platt. Rynn's argument is based on the fact that after Mr. Platt represented to the trial court on January 28, 1988, that no appeal had been filed, and the trial court executed an agreed order for disbursement of the funds, Mr. Platt petitioned for leave to file a late appeal. As a result of Mr. Platt's conduct, the trial judge barred Mr. Platt from practicing in his courtroom.

The record shows that Mr. Platt misrepresented his intention to appeal, but the issues of whether Mr. Platt was guilty of misconduct or whether Mrs. Rynn was improperly placed in a position of having to forfeit the right of appeal to receive her money, are irrelevant. The record shows absolutely no bias or ill will towards Mrs. Rynn or Mr. Platt until Mr. Platt's conduct and motives became apparent to the trial court in the hearing on March 3, 1988. The word "prejudice" implies judgment before the fact. Here, it is asserted that the chilled relations between the court and counsel, which arose from conduct in January and February of 1988 and culminated with the trial judge barring Mr. Platt from his courtroom in March 1988, improperly influenced the trial court's ruling in December of 1987. We are not persuaded.

In conclusion, the summary judgment was decided on the basis of the pleading that supported it, the original complaint. Mr. Platt had every opportunity to withdraw the motion or amend it to be consistent with the allegations of the amended complaint, but did not do so. Looking to the form and substance of the accounts, the trial court properly found that Mrs. Rynn was entitled to half the funds from the

accounts for which she had signed. Further, the summary judgment order effectively determined the rights of the parties with respect to all of the funds. Because we hold that the trial court ruled correctly, the amended complaint, as noted above, is now moot. Finally, the record shows absolutely no evidence of bias or prejudice. The ruling on Rynn's motion for summary judgment is affirmed, and accordingly, it is unnecessary to consider the motion for substitution of judges.

Affirmed.

MANNING, P.J., and QUINLAN, J., concur.