MARY G. KERGER, Plaintiff-Appellant, v. BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT No. 502, County of Du Page, and State of Illinois, a/k/a College of Du Page, Defendant-Appellee.

Second District    No. 2—96—1374

Opinion filed December 4, 1997.—Rehearing denied February 4, 1998.

Arthur G. Jaros, Jr., of Richter, Jaros & Robinson, of Oak Brook, for appellant.

Everett E. Nicholas, Jr., and Frank B. Garrett III, both of Robbins, Schwartz, Nicholas, Lifton & Taylor, of Chicago, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, Mary G. Kerger, appeals from an order dismissing her action against defendant, Board of Trustees of Community College District No. 502, County of Du Page, and State of Illinois, a/k/a College of Du Page. Plaintiff argues that the trial court erred in dismissing her amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1994)) and in denying her motion for summary judgment. We affirm.

Plaintiff began teaching courses on business law at defendant's campus in the fall of 1993. She continued to work full time as a "replacement" teacher during the next six semesters. On January 17, 1996, approximately 2½ years into her employment, plaintiff received a notice of dismissal from defendant. The notice stated that the effective date of dismissal was June 11, 1996, pursuant to article III of the Public Community College Act (the Act) (110 ILCS 805/3—1 et seq. (West 1994)).

Plaintiff quickly pursued her remedies under the grievance procedure outlined in the collective bargaining agreement between defendant and the faculty association. Plaintiff requested the reasons for her dismissal, and defendant informed her that she was only hired as a temporary employee and that it had reevaluated the ratio of students to faculty and eliminated a full-time position. Plaintiff filed

her grievance. Her first meeting pursuant to the grievance procedure was held on February 12, 1996. Plaintiff chose to bring with her an "advisor/observer," in this case a court reporter who would create a stenographic record of the meeting.

Defendant rejected this stage of the grievance by a written response dated February 23, 1996. Defendant stated that the reasons for plaintiff's dismissal were succinctly stated in the notice of dismissal and that defendant was acting under its inherent management authority. Defendant admitted that plaintiff was not dismissed for reasons of "financial exigency," but was dismissed pursuant to the broad discretion inherently given to defendant.

Plaintiff filed her appeal under the grievance procedure on March 4, 1996. The parties then met for a second meeting. Defendant informed plaintiff that they would not conduct the meeting in the presence of the court reporter that plaintiff had brought as her advisor/observer. Plaintiff declared the meeting suspended until the board made a ruling on her right to have a court reporter as her advisor/observer.

Plaintiff filed a complaint in the trial court on March 27, 1996. Plaintiff sought the equitable relief of a permanent mandatory injunction to allow the grievance hearing to be held in the presence of the court reporter. Defendant moved to dismiss the complaint pursuant to section 2—615 of the Code. On July 22, 1996, the trial court granted defendant's motion to dismiss and denied plaintiff's motion to amend the complaint. The trial court later vacated this order and granted plaintiff leave to amend her complaint.

Plaintiff filed her amended complaint on September 3, 1996. This complaint did not seek injunctive relief on the issue of the court reporter, but instead sought declaratory relief on plaintiff's right to continued employment and tenure.

Plaintiff first alleged that defendant did not have a sufficient statutory basis for her dismissal. She noted that defendant did not dismiss her based on performance or financial exigency. Plaintiff also alleged that defendant was not decreasing the number of faculty members or discontinuing any teaching services or programs. Plaintiff interprets section 3B—3 of the Act (110 ILCS 805/3B—3 (West 1994)) to provide that nontenured teachers who are not properly dismissed under either section 3B—3 or 3B—5 will be considered reemployed for the following school year. Plaintiff finally asserts that her reemployment would thus afford her tenure status under section 3B—3.

Defendant filed a motion to dismiss the amended complaint pursuant to section 2—615 of the Code (735 ILCS 5/2—615 (West 1994)).

A hearing was held on this motion on September 26, 1996. The trial court examined the statute and acknowledged that defendant had not complied with every aspect of sections 3B—3 and 3B—5 of the Act. However, the trial court held that defendant acted within its common-law authority and granted its motion to dismiss the amended complaint. Plaintiff subsequently filed a motion for rehearing and a motion for summary judgment. The trial court denied both motions.

The central issue on appeal is rather simple, although not addressed succinctly by either party: whether the trial court erred in granting defendant's section 2—615 motion to dismiss the complaint. To determine the resolution of this issue, we must first evaluate the trial court's application and interpretation of the Act. Plaintiff also asserts that the trial court erred in denying her motion for summary judgment pursuant to section 2—1005 of the Code (735 ILCS 5/2—1005 (West 1994)).

■ Before addressing the issues in this case, we note plaintiff's use of photocopied reproductions of statutory sections and pages from the record of proceedings within the text of the brief in chief. While the brief is 61 pages in length, it seems likely that the brief would exceed 75 pages if these sections had not been presented in a greatly reduced, dual-column format. Additionally, both parties have used numerous footnotes that contain substantive arguments more properly reserved for the text of the brief. We find this to be a violation of Supreme Court Rule 341 (155 Ill. 2d R. 341). Adherence to the page limitations and guidelines for footnote usage is not an inconsequential matter. See *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 14-15 (1995). Nor are these limitations and guidelines arbitrary exercises of the supreme court's supervisory powers. *47th & State Currency Exchange, Inc. v. B. Coleman Corp.*, 56 Ill. App. 3d 229, 232 (1977). On the contrary, Rule 341 represents the Illinois Supreme Court's considered opinion of the format that best facilitates the clear and orderly presentation of arguments. Parties ignore Rule 341 at their peril. On our own motion, therefore, we strike all of the footnotes from all three briefs and the reduced statutory quotations and pages of record from plaintiff's brief in chief.

■ A section 2—615 motion admits all well-pleaded facts as true, but not conclusions of law or factual conclusions that are unsupported by allegations of specific facts. *Talbert v. Home Savings of America, F.A.*, 265 Ill. App. 3d 376, 379 (1994). If, after disregarding any legal and factual conclusions, the complaint fails to allege sufficient facts to state a cause of action, the motion to dismiss should be granted. *Groenings v. City of St. Charles*, 215 Ill. App. 3d 295, 299-300 (1991). In ruling on a motion to dismiss for the failure to state a

cause of action, the complaint's factual allegations are to be interpreted in the light most favorable to the plaintiff, but factual deficiencies may not be cured by liberal construction. *Groenings*, 215 Ill. App. 3d at 300. "This process does not require the court to weigh findings of fact or determine credibility. As such, the reviewing court is not required to defer to the trial court's judgment and will review the matter *de novo.*" *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1084 (1994).

■ Applying a *de novo* standard, we review plaintiff's complaint. Plaintiff's complaint first alleges that defendant failed to comply with section 3B—3 of the Act, which states:

> "Every Board shall provide by rule or contract for a procedure to evaluate the performance and qualifications of non-tenure faculty members. If the implementation of such procedure results in a decision to dismiss a non-tenure faculty member for the ensuing school year or term, the Board shall give notice thereof to the faculty member not later than 60 days before the end of the school year or term. The specific reasons for the dismissal shall be confidential but shall be issued to the teacher upon request. If the Board fails to give such notice, within the time period, the faculty member shall be deemed reemployed for the ensuing school year. If the Board fails to give such notice within the time provided during the third year, or during the fourth year in the case of a one year extension, the faculty member shall enter upon tenure during the ensuing school year or term." 110 ILCS 805/3B—3 (West 1994).

This section requires a public community college to create an evaluation procedure and places restrictions upon the dismissal of nontenured faculty pursuant to these procedures.

Defendant asserts that it complied with the statute. Specifically, defendant argues that it created an evaluation procedure, evaluated plaintiff according to the procedure, and gave plaintiff timely notice. Defendant asserts that it is in compliance with this section even if it dismisses faculty members who have excellent evaluations. Defendant explains this assertion by arguing that, once an evaluation system is in place and implemented, nothing within this section prevents a public community college from exercising vast common-law discretion in the dismissal of nontenured teachers.

■ The preeminent goal of a court construing a statute is to give effect to the legislature's intent. *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 282 (1994). Statutory language is the best indicator of this intent, and where such language reveals the legislative drafters' intent, we may not resort to other aids for construction. *People v. Brooks*, 158 Ill. 2d 260, 264 (1994). "It is axiomatic that in interpret-

ing a statute the language used by the legislature must be given its plain and ordinary meaning." *People v. Brandon,* 162 Ill. 2d 450, 460-61 (1994).

■ We determine that defendant's interpretation of the statute does not represent the "plain and ordinary meaning" of the statute. Dismissing nontenured faculty members who receive excellent evaluations cannot be seen as actions pursuant to the implementation of the evaluation procedure. This interpretation is absurd and would render the entire section meaningless. Courts should avoid construing a statute in a manner that reduces any element of the legislation to mere surplusage. See, *e.g., Bonaguro v. County Officers Electoral Board,* 158 Ill. 2d 391, 397 (1994) (if possible, when determining the legislature's intent, statutes should be construed so each portion has meaning). Therefore, we reject defendant's argument and find that defendant's actions were not in compliance with section 3B—3.

Plaintiff also argues that defendant did not comply with section 3B—5 of the Act (110 ILCS 805/3B—5 (West 1994)). It does not appear that defendant really disputes this point, nor could it. This section would require defendant to provide plaintiff with a statement of honorary dismissal as part of the notice of dismissal. No such statement was provided to plaintiff. Therefore, we determine that defendant did not comply with the notice requirements of section 3B—5 of the Act.

However, our resolution of these arguments does not resolve this appeal. Defendant's adherence or nonadherence to these sections of the Act is only relevant if these sections are the exclusive vehicles for the dismissal of nontenured faculty members of a public community college. The trial court found these sections of the Act inapplicable. At the same time, the trial court did find defendant's actions within the broad, common-law powers inherently given to a school board. In essence, the trial court found that these sections were not the exclusive remedies for dealing with the dismissal of nontenured teachers. Both parties have been consumed in their own arguments and have largely ignored the findings of the trial court.

It is unclear from the face of the statute whether the legislature intended to supplement or replace the common law with this enactment. We will look to the common law and then to the legislative history of the Act to determine its legislative intent. Under the common law, "[t]he employment of personnel is one of the nondelegable functions of school boards." *Board of Trustees, Prairie State College v. Illinois Educational Labor Relations Board,* 173 Ill. App. 3d 395, 413 (1988). "A school board has maximum flexibility regarding nontenured employees." *Board of Trustees of Community College District*

*No. 508 v. Federation of College Clerical & Technical Personnel, Local 1708*, 153 Ill. App. 3d 37, 44 (1987). In general, Illinois statutes regarding teacher tenure are "in derogation of common law and must be strictly construed in favor of the school district." *Stamper v. Board of Education of Elementary School District No. 143*, 141 Ill. App. 3d 884, 888 (1986). Finally, it has been clearly established that the "legislature has given a community college board of trustees discretionary powers to rehire or terminate a nontenured teacher." *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 167 Ill. App. 3d 998, 1000 (1987).

A review of the legislative history of the Act reveals no intent to supersede the common law in this area. See 81st Ill. Gen. Assem., Senate Proceedings, May 24, 1979, at 227-30. The legislators were concerned because many community colleges had not established tenure programs. This area of the Act was designed to create a uniform system of tenure for community colleges in Illinois. The statute was not designed to create new restrictive and exclusive protections for nontenured teachers. Tenure was deemed important because of the broad discretion the common law affords school boards in dismissing nontenured teachers. We do not believe that the legislature intended to eliminate this discretion. Therefore, we find that both the common law and the Act are applicable to the dismissal of nontenured teachers from community colleges.

The amended complaint states that plaintiff disputes defendant's ability to dismiss her under its inherent discretionary managerial authority. The trial court found that defendant had such authority as a matter of law. We agree. The language of the Act makes this point very clearly as follows:

> § 3—30. The board of any community college district has the powers enumerated in Sections 3—31 through 3—43. This enumeration of powers is not exclusive but the board may exercise all other powers, not inconsistent with this Act, that may be requisite or proper for the maintenance, operation and development of any college or colleges under the jurisdiction of the board." 110 ILCS 805/3—30 (West 1996).

Accepting all of the factual allegations in plaintiff's complaint as true, we find that the complaint fails to state a claim upon which relief can be granted. Therefore, we affirm the trial court's dismissal of this complaint pursuant to section 2—615.

Affirming the trial court's dismissal of this action obviates the need to address whether the trial court erred in denying plaintiff's motion for summary judgment.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and BOWMAN, JJ., concur.