2026 IL App (2d) 240652-U
No. 2-24-0652
Order filed January 21, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In* re MARRIAGE OF CURT S. VILLADSEN, ) | | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01-D-1193 |
| | ) | |
| SARAH E. BATES, | ) | Honorable |
| | ) | Stephen M. DeRue, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial court did not err in denying respondent's petition for attorneys' fees and costs and to enforce judgment for dissolution of marriage.

¶ 2                                I. INTRODUCTION

¶ 3    The instant appeal arises out of post-decree litigation concerning the dissolution of the marriage of petitioner, Curt S. Villadsen, and respondent, Sarah E. Bates. Following the dissolution of marriage, the parties made multiple attempts to enter a Qualified Domestic Relations Order (QDRO) dividing the marital portion of petitioner's pension from the International Brotherhood of Electrical Workers (IBEW). After the plan administrator rejected the original QDRO, and then

an amended QDRO, respondent filed a petition for rule to show cause alleging petitioner's noncompliance in executing a proposed second amended QDRO. While the petition for rule to show cause was pending, the parties successfully entered a QDRO ("the Final QDRO"), after which each party petitioned the trial court to apportion attorney fees and costs, and respondent also sought to enforce the judgment for dissolution. Subsequently, the circuit court of Lake County denied both parties' petitions. Respondent now appeals the order of the trial court denying her petition. For the reasons that follow, we affirm.

¶ 4                                    II. BACKGROUND

¶ 5     The following recitation of the facts relevant to the disposition of this appeal is taken from undisputed facts presented in the parties' briefs and those facts alleged in the pleadings at issue at the trial court hearing, if admitted by the opponent. On January 26, 2004, the parties entered a judgment for dissolution of marriage incorporating a marital settlement agreement ("MSA"). The MSA contained an "Execution Clause" in which each party agreed to "execute and acknowledge any and all documents which may be necessary or proper to carry out the purposes of" the MSA. The MSA also contained a prevailing party provision with respect to enforcement proceedings. A draft QDRO ("Original QDRO") dividing petitioner's IBEW pension was attached to the MSA. However, both parties agree that nothing was done to effectuate the entry of the Original QDRO from 2004 until 2017, when it was signed by both parties, entered by the court, and submitted to the plan, but later rejected by the plan administrator for petitioner's IBEW pension.

¶ 6     Unrelated to this appeal, on September 28, 2020, respondent, who is an attorney but was acting as a self-represented litigant, filed a post-decree petition, seeking resolution of issues regarding unpaid child support and the division of marital property. The parties subsequently engaged in extensive litigation regarding those matters. All the unrelated post-decree matters were

resolved by an agreed order entered on April 6, 2022, which also included an amended QDRO ("Amended QDRO") apportioning petitioner's IBEW pension.

¶ 7   Unfortunately, the Amended QDRO was also rejected by the plan administrator. Sometime thereafter, respondent herself drafted a proposed second amended QDRO and sent it to the plan administrator for approval and to petitioner for signature. Exactly when this occurred is not alleged. But on July 24, 2023, respondent attempted to enter the proposed second amended QDRO as an agreed order, but the clerk refused it because it lacked petitioner's signature. On August 4, 2023, respondent filed a Petition for a Rule to Show Cause and a month later an Amended Petition for a Rule to Show Cause. In these pleadings, respondent complained that petitioner refused to sign the proposed second amended QDRO and invoked the civil contempt powers of the court. Then counsel appeared in the litigation for both parties. Respondent sent a letter to petitioner's counsel on October 14, 2023. The parties agree that petitioner, at his own expense, also hired QDRO counsel, who, with the cooperation of both parties, then shepherded the QDRO issue to conclusion, with the entry of the Final QDRO on December 12, 2023. The plan administrator approved the Final QDRO in February 2024 and advised both parties that there was a 60-day hold on processing the Final QDRO to accommodate objections, unless each side filed a waiver. On March 28, 2024, the QDRO attorney for respondent withdrew her limited scope appearance. In July 2024, the plan administrator informed respondent that her monthly benefits would be $1129.28.

¶ 8   Despite the entry of the Final QDRO, the Amended Petition for Rule was set over for status numerous times, although it was never presented for hearing or ruled upon. The controversy continued, however, and evolved into competing petitions for monetary relief. In August 2024, petitioner filed a "Petition for Attorney Fees and Costs" under Section 508(b) of the Illinois

Marriage and Dissolution of Marriage Act (the Act). 750 ILCS 5/508(b) (West 2022). Petitioner sought to recoup his expenses related to retaining QDRO counsel, claiming that he fully covered this expense after respondent failed to "appropriately prepare the multitude of iterations of the QDRO." He also sought to have respondent pay his litigation counsel's fees, citing "unnecessary delay by refusing to resolve the issue, despite the existence of multiple signed QDRO's," and "unnecessary litigation." In response, respondent admitted petitioner retained QDRO counsel but denied any responsibility to pay those or any attorney fees incurred by petitioner.

¶ 9 Respondent filed her own "Petition for Attorney Fees and Costs and to Enforce Judgment for Dissolution of Marriage" ("Fee and Enforcement Petition"), pursuant to sections 508(b) and 511 of Act. See 750 ILCS 5/508(b); 511 (West 2022). The admitted facts in that Petition are recounted above.

¶ 10 For reasons explained below, we will note that respondent alleged in her Fee and Enforcement Petition but petitioner denied in his responsive pleading all of the following: that petitioner refused to respond to numerous inquiries from respondent about the proposed second amended QDRO; that it was "only" after she filed her original Petition for Rule to Show Cause and then a Motion for Default, that petitioner retained counsel and appeared; that petitioner's counsel refused to communicate with respondent; that respondent "was forced to retain counsel to represent her in this post-decree matter"; that there was silence from petitioner during (an undefined) 14-month period; that petitioner was not in compliance with the MSA, in that he failed to communicate, cooperate, and act in good faith and deal fairly; that respondent requested of petitioner and his counsel that petitioner execute the waiver of the 60-day hold; that petitioner refused to waive the 60-day hold; that as a result, respondent failed to receive benefits during the 60-day hold; and that the payments could not be made retroactive.

¶ 11    A hearing on the respondent's Fee and Enforcement Petition and petitioner's competing petition for fees and costs was held on September 30, 2024. No evidence was adduced at this hearing. The parties offered no testimony, documentary evidence or any other proofs. The trial court heard only the arguments of counsel.

¶ 12    The trial court denied both parties' petitions[1]. In its oral ruling, the trial court stated that "[n]either party had entirely clean hands in everything that has happened here." The parties drafted an initial QDRO that was not accepted, cooperated in drafting and filing an amended QDRO which was again rejected, and ultimately "ended up taking their own routes independently in regards to the preparation of the final QDRO." Respondent prepared her own version of the QDRO and contacted petitioner, but he did not respond. Meanwhile, petitioner contacted "an attorney in Lake County who specialized in regards to QDROs and neither one of the parties is cooperating with each other but doing things independent of each other, taking affirmative actions in regards to this in regards to each other and finally getting the QDRO entered in this matter 19-plus years later." Respondent appealed this ruling.

¶ 13                              III. ANALYSIS

¶ 14                          A. Forfeiture of Arguments

---

[1]Although the Amended Rule to Show Cause filed by respondent against petitioner had been previously set for hearing on this same date, the parties' arguments were directed only at relief by way of the competing enforcement petitions and neither the court's oral ruling nor the court's written order (prepared by respondent's counsel) addressed the Amended Rule to Show Cause. We note that in her pleading responding to petitioner's petition for fees, respondent stated, "As a result of [the entry of the agreed second amended QDRO on December 13, 2023] Sarah's Amended Petition for Rule to Show Cause was rendered moot as to the entry of a QDRO, but not as to her other requests for relief."

¶ 15    As an initial matter, we note that petitioner identifies several arguments respondent makes in her brief that he asserts were never advanced or were only briefly referenced at the trial court level. Petitioner argues that "an appellant who devotes a single sentence to an argument in the trial court and then spends multiple pages of her brief fleshing out that argument which she failed to develop below" should be held to the same standard as an appellant "who fails to develop an argument in her brief or support it with citations and law." Thus, petitioner argues that many of respondent's arguments on appeal should be deemed forfeited pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). We agree that respondent now expands in this court upon issues which she only briefly referenced at the trial court level. "Forfeiture, however, is a limitation on the parties, not on this court." *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 377 (2008). We will not forfeit respondent's arguments for the reasons argued by petitioner. On another basis, however, we do find forfeiture that will be addressed below in context. Accordingly, we continue our analysis as necessary to resolve this appeal.

¶ 16                                B. Standard of Review

¶ 17    Initially, we address our standard of review. Respondent argues that because the trial court's hearing was conducted without witness testimony and "based upon the filings in the record," this court should review its ruling *de novo*, citing *In re Marriage of Grandt*, 2022 IL App (2d) 210648, ¶¶ 19-21. Petitioner does not address the appropriate standard of review. In this case, there were no witnesses presented, or any other potential proof presented to the court that day. The only evidence was the parties' admissions in response to the competing petitions before the court for hearing. In view of this circumstance, the trial court was not required to gauge the demeanor and credibility of witnesses, determinations which we would accord deference. *Cf. Bazydlo v. Volant*, 164 Ill. 2d 207, 214–15 (1995) ("The trial judge, as the trier of fact, is in a position superior

to a reviewing court to observe witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive."). Instead, it made its factual findings based upon the same record presented to this court. Therefore, the trial court was not in a superior position to this court to make findings, and so a more deferential standard of review is not warranted. See *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). We agree with respondent that the matter should be reviewed *de novo*. See *People v. Morgan*, 2025 IL 130626, ¶¶ 45-49 (applying *de novo* standard of review to pretrial detention decisions, where no live testimony is presented).

¶ 18                                   C. The Merits

¶ 19    Turning to the merits of this appeal, the order appealed from was the trial court's denial of respondent's Fee and Enforcement Petition. Although the trial court also heard petitioner's competing petition for fees and costs, he has not appealed and that ruling is not before us. Respondent argues that she established petitioner's liability under section 508(b) of the Act. She also contends she proved a breach of the MSA and therefore entitled to compensatory damages, as well as attorney fees pursuant to the prevailing party clause in the MSA. Finally, she contends she met the criteria for an award of prejudgment interest. Both the 508(b) relief and the breach of contract remedies are predicated upon alleged violations of the execution clause of the MSA. Respondent contends there were two violations: first, petitioner's alleged failure to sign the proposed second amended QDRO; second, the alleged failure to execute the 60-day waiver of the objection period.

¶ 20    Initially, we will briefly explain the applicable legal framework for the differing relief sought by respondent. The Fee and Enforcement Petition requested attorney fees and costs pursuant to section 508(b) of the Act, and consequential and other damages based upon a breach

of the MSA. Section 508(b) provides, in pertinent part:

" In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party." 750 ILCS 5/508(b) (West 2022).

¶ 21    Under the Act, section 508 is available as remedy for violations of an order or judgment of the court.  In this matter, we are not concerned with alleged noncompliance with an order of the court, rather the allegations contend there was noncompliance with the MSA, which is incorporated into the judgment under section 502(e) of the Act. 750 ILCS 5/502(e) (West 2022) ("Terms of the agreement set forth in the judgment are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms."). In short, the Act treats noncompliance with the MSA the same as it does noncompliance with a court order.

¶ 22    Once the trial court hearing a 508(b) petition determines that an order of court or term of a dissolution judgment has not been complied with, the court should then determine whether any failure to pay was "without compelling cause or justification." See *In re Marriage of Roach*, 245 Ill. App. 3d 742, 748 (1993). The noncompliant party bears the burden of proving the existence of compelling cause or justification for the noncompliance. *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 397 (2002). Provisions of section 508(b) are mandatory and, while allowing a determination of reasonableness, do not allow for discretion as to payment if the defaulting party's conduct was without compelling cause or justification. *In re Marriage of Clay*, 210 Ill. App. 3d 778, 782 (1991).

¶ 23    We now examine the legal underpinnings of the contract remedy sought in this matter.

Section 502(e) explicitly provides that provides that the terms of an agreed judgment of dissolution "are enforceable as contract terms." 750 ILCS 5/502(e) (West 2022). Marital settlement agreements are contracts and, therefore, the rules governing the interpretation of contracts apply. *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 71. A marital settlement agreement is construed in the manner of any other contract, and the court must ascertain the parties' intent from the language of the agreement. *Blum v. Koster*, 235 Ill. 2d 21, 33, 919 N.E.2d 333, 340 (2009). Where the language of the agreement is clear and its meaning is unambiguous, intent must be determined solely from the agreement's language and courts must give that language such effect. *In re Marriage of Farrell & Howe*, 2017 IL App (1st) 170611, ¶ 12. "The essential elements of a breach of contract are: (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) [a] resultant injury to the plaintiff." (Citation omitted.) *Babbitt Municipalities, Inc. v. Health Care Serv. Corp.*, 2016 IL App (1st) 152662, ¶ 27. So, as it relates to the Petition in controversy, a determination of breach of the MSA is required for both an award of attorneys' fees under section 508(b) and contract damages.

¶ 24    Before we address whether the record supports reversal, we point out that respondent's brief argues and presents, as "documentary evidence" in support of her contentions, information consisting of allegations she made in her Fee and Enforcement Petition, allegations which were *denied* by her opponent. The denial of an allegation of fact does not substantiate a fact. *Cf. Aurora Bank FSB v. Perry*, 2015 IL App (3d) 130673, ¶ 18 (observing that the denial of an allegation in a plaintiff's complaint does not plead an affirmative defense). Instead, assuming materiality, it creates a fact issue, which should be resolved with the presentation of proof. A related error in her brief is respondent's construction of her own allegations, unadmitted by the petitioner, as probative. For example, she argues as "facts" matters that were alleged *by her* in her response to

petitioner's competing petition for fees and costs and in her affirmative defenses. None of these matters were admitted by petitioner. Neither party replied to affirmative defenses or supplementary allegations raised in response pleadings. Her allegations are just that—allegations. None of this proved anything in the trial court, nor will it provide this court a basis to reverse.

¶ 25    In support of reversal, respondent also relies extensively on factual matter gleaned from other pleadings in the record. If there were admissions made in pleadings that were not at issue before the trial court as it heard this Fee and Enforcement Petition, the proper method to present those was to ask the trial court to take judicial notice of that pleading in the court file. See *In the Interest of J.G.,* 298 Ill. App. 3d 617, 627 (1998). The trial court, especially a busy family court, does not have the responsibility to comb the record in search of anything that might substantiate a party's contentions, and this court will not entertain arguments to reverse based on matters not properly before the trial court. See *People v. Northern*, 2025 IL App (4th) 231067-U, ¶ 55, *appeal denied*, No. 132204 (Ill. Nov. 26, 2025) (rejecting appellant's argument to reverse based upon evidence not presented to or considered by the lower court): *cf. People ex rel. Department of Human Rights v. Oakridge Healthcare Center, LLC*, 2020 IL 124753, ¶ 36 ("A reviewing court *may only affirm* on any basis in the record; it may not reverse on any grounds found in the record.") (Emphasis in original.); *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 392 (2002) ("[W]e review the correctness of the trial court's result rather than the correctness of its reasoning."). The parties chose the expediency of presenting their petitions to the trial court by way of argument only and without any proof additional to the admitted allegations in the pleadings before the trial court. They are bound by the record they made.

¶ 26    But this leads to another problem. Because respondent's statement of facts in her brief and her arguments rely on matters that were not adduced before the trial court, they are not directed to

the issue before this court, which is whether a breach of the MSA was established by what was actually before the trial court. Instead, the brief focuses its lengthy and disjointed analysis to contentions implicitly founded in the misapprehension that anything reduced to print in the trial court record is "documentary evidence" that will support reversal. This greatly impeded our review.

¶ 27    Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) governs the contents of an appellant's brief. "The purpose of the rules is to require parties before a reviewing court to present clear and orderly arguments so that the court can properly ascertain and dispose of the issues involved." *Hall v. Naper Gold*, supra at ¶ 7. Rule 341(h)(6) requires a statement of facts that contains the facts "necessary to an understanding of the case." Ill. S.Ct. R. 341(h)(6) (eff. Oct. 1, 2020). A party must clearly define the issues to be decided and set forth cogent arguments in support of his or her position. *Maday v. Township High School District 211*, 2018 IL App (1st) 180294, ¶ 50. The rules of procedure concerning appellate briefs are not aspirational. See *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999) ("The rules of procedure concerning appellate briefs are rules and not mere suggestions."). Nor are they "arbitrary exercises of the supreme court's supervisory powers." *Kerger v. Board of Trustees of Community College District No. 502*, 295 Ill. App. 3d 272, 275 (1997). This court "is not a repository into which an appellant may foist the burden of argument and research." *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37. When a party's brief contains repeatedly violates Rule 341(h) or fails to adequately develop their arguments, they are subject to forfeiture. See *Maday*, 2018 IL App (1st) 180294, ¶ 50. For these reasons, respondent's argument that the trial court's order should be reversed is forfeited.

¶ 28    Forfeiture aside, we turn to the first arguable basis of the alleged noncompliance with the MSA, petitioner's alleged failure to sign the proposed second amended QDRO. The relevant

admitted allegations in the Fee and Enforcement Petition are that after the Original QDRO was signed by both parties, entered by the court, and rejected by the plan administrator in 2017, the Amended QDRO was signed by both parties, entered by the court, and also rejected by the plan administrator in 2022. After that, it is admitted that respondent took it upon herself to draft the proposed second amended QDRO and sent it to petitioner for signature. Petitioner admitted that on July 24, 2023, respondent attempted to have the proposed second amended QDRO entered as an agreed order but was unable to have it heard as an agreed order because the proposed order was not signed by the other party in the case, that is, by petitioner. (Petitioner responded further in his answer adding additional information about this event but this was not admitted by respondent in a reply and we do not consider it.) It is further admitted that he signed, as an agreed order, the Final QDRO, on December 12, 2023. Respondent also concedes that during this latter period, petitioner hired the QDRO attorney at his own expense. QDRO counsel ultimately succeeded in entering and getting the Final QDRO approved by the plan administrator.

¶ 29    The issue is whether, on this record, respondent met her burden to prove noncompliance with the MSA based upon petitioner breaching a duty to sign the proposed second amended QDRO before it was entered by the court, at the time respondent sent it to him. The execution clause of the MSA required party "to execute and acknowledge any and all documents which may be necessary or proper to carry out the purposes of this Agreement." But it has not been argued in this court or established in the record that petitioner's signature on the QDRO was "necessary or proper" to effectuate the division of the pension. We note that respondent conceded in pleadings below that "ERISA does not require the parties' signature on a QDRO entered by the court." See *Rynn v. Owens,* 181 Ill. App. 3d 232, 235 (1989) (noting that any admissions that are not the product of mistake or inadvertence bind the pleader throughout the litigation.); *Freedberg v. Ohio*

*National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 31 (finding that unverified allegations are evidentiary admissions).

¶ 30    Furthermore, it appears that respondent never presented the proposed second amended QDRO to the trial court to request its entry, and certainly the signature of petitioner on the QDRO was not necessary for the trial court to hear a motion to enter the proposed second amended QDRO. Therefore, his signature was not "necessary or proper" in the language of the execution clause, for either plan approval of the QDRO or the trial court's entry of it. In sum, the evidence before the trial court did not prove a breach of the MSA. This determination makes it unnecessary to address whether the conceded fact that petitioner engaged QDRO counsel at his own expense established compelling cause or justification for any alleged failure to comply with the MSA.

¶ 31    We will again point out that although respondent's brief is rife with accusations that petitioner frustrated her efforts to have the QDRO entered, her arguments in this court assume facts petitioner explicitly denied. These include that he failed and refused to communicate with her, he refused to respond to "numerous inquiries" by respondent about the proposed second amended QDRO, he failed to cooperate with respondent, he was silent during the relevant period, and he hired counsel "only after" respondent initiated the contempt proceedings. In fact, respondent's petition never actually alleges that respondent expressly refused to sign the proposed second amended QDRO, only that she sent it to him "for signature." But given that petitioner does admit respondent's attempt to have it entered as an agreed order was refused due to the lack of his signature, a fair reading of the pleadings at issue support the deduction that he did not sign it. In any event, if there was more here than what was admitted by petitioner, it was not proven at the hearing.

¶ 32    Respondent's second basis for establishing that petitioner failed to comply with the MSA

was that petitioner allegedly failed to waive the 60-day objection period after entry of the Final QDRO and plan approval of it, which would have allowed respondent to receive her payments earlier. But an examination of the Fee and Enforcement Petition's allegations and the pleading in response reveals that petitioner denied that respondent ever requested that he execute the waiver, denied that he refused to do so, and denied any delay resulted in respondent's receipt of the pension payments. The burden was on the respondent to establish the elements of contract breach. *Midwest Neurosurgeons, LLC v. F.W. Elec., Inc.*, 2025 IL App (5th) 240957, ¶ 14. Again, given that there were no proofs additional to the admitted pleadings at issue, a breach of the execution clause was not proven with regard to the 60-day waiver.

¶ 33    Because breach or noncompliance with the MSA was required for both relief under section 508(b) of the Act and for contractual damages, we need not address any of the remaining issues related to respondent's entitlement to relief, including whether there was compelling cause or justification for alleged noncompliance by petitioner, the construction of the prevailing party clause, or the entitlement to pre-judgment interest.

¶ 34    In conclusion, respondent's arguments that she established petitioner's breach of the execution clause of the MSA by failing to sign documents necessary and proper to effectuate the division of the pension are forfeited.

¶ 35    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 36    Affirmed.